Aiyang Li against the Attorney General, 14-2178. And we'll hear from Mr. Zhang. Good morning, Your Honor. My name is Yongbin Zhang. I represent petitioner in this case, Ms. Li. This is a petition for review of BIA's dismissal of petitioner's appeal to IJ's denial of asylum application. Ms. Li, at the time of the individual hearing before the judge, was two separate claims. First is a forced abortion under China's family planning practice. Second is religious activities in China. And this case is about credibility determination under the Real ID Act, and it's about whether petitioner's testimony, in combination of the corroboration she submitted, has met her burden of proof for the two claims. And it is also about whether her corroboration is sufficient under Real ID Act. And if not sufficient, like it was found first by IJ and adopted by the BIA. I want to clear two things up. Let's first start with the abortion issue. Yeah. Is she claiming past persecution in fear of future persecution? I think this is a past persecution claim under the Immigration and Nationality Act. If applicants can be credible or testified, or if the IJ or the adjudicator found there's a forced abortion, there's a past persecution under the Immigration and Nationality Act. Well I, you know, I don't know about the IJ. I assume they must not have believed her. But the only thing is, it was at the end of, really, the last sentence in your, I guess we call it the gray brief, that you say, lastly it is important to note that this abortion occurred more than 10 years ago. So it is reasonable that a letter written more than a decade later, according to that event, would simply do just that rather than go into minute details. But the fact it was 10 years ago, that seems a pretty belated claim for past persecution. You know, she stayed there. I've got all kinds of problems, you know. You can't have another baby. She had, in addition to that, a forced IUD, and then they divorced. Now she's, I don't know what went on for eight or nine years, but then she gets into this religious thing, which seems to be more central to the claim. But that's as horrendous as what she describes. If that were true, and it were not long ago, it would certainly be a very strong case. But it seems to me that two things, I have to assume they didn't believe her, the IJ didn't believe her, and that it was all a long time ago. Your Honor, I understand your position. While for this forced abortion claim, the law has played out like this. If the asylum seeker was found having undergoing a forced abortion or forced sterilization, no matter when it happened, there's a past persecution. And then there is a regulatory presumption of well-founded future persecution. For the same reason? Yeah, under the same protective ground. Unless the government can rebut such presumption by propounder's evidence that the country condition here is in China has changed to such an extent that basically says, you know, if China has changed the family planning practice, and this is, the burden would be shifted to the government to present the evidence. But in this case, there's no evidence from the government indicating that the country condition in China has changed to such an extent that Ms. Li would have suffered, will suffer no future persecution. Was she, how does she know, 42 or something? Yeah, she is, I think she's in her 40s. Is she married again? No, she was divorced at the time she applied the asylum application, and to my knowledge she has not changed her marital status. Well, that just goes to my question, what's the future? I'm sorry? What's the future threat of persecution? Maybe China hasn't changed its... Well, yeah, if they no longer enforce the family planning practice, or they would announce that, you know, instead of one couple only have one child, you know, one couple kind of unlimited... I'm not going to do that, I'm just looking at her particularly. Her is, no, there's no evidence in the record indicating that she's married and... Nor that during this whole eight or nine years while she's over there after the abortion, which if you look at the believer, it's awful. Okay. But what it seems it's, unfortunately, that's over, and now you're, now she's more focused on the religion, and that's your other claim, so I guess you can talk about that too, but that's, my problem is it's just so long ago. Yes, Your Honor, but wait, you know, for this kind of claim, the family planning practice, you know, presumably we can argue that the fact that she was, she was also have an IOD inserted, and she was, she has been bearing with this IOD up until she came to the United States, maybe even now, because we did submit evidence indicating that by the time of her body, so arguably this is a form of persecution against her will. I don't know anything about that, I don't know, is that something you have eight or ten years? Permanent? I'm sorry, Your Honor? The IOD, I don't know how long that stays in, or, you know, she did it from an ultrasound over here, and they showed that she had... Yeah, she did... Why don't you talk about the religion thing, I've already... Okay, why the religious claim is not waived? Yeah, we, the reason we, we argue that we did not waive the religious claim, because the IJ made a credibility, adverse credibility finding, and a couple of evidence, or pieces of evidence, was most of them, most of those evidence going to the religious activities, like the medical record, and also at the final hearing, before the, before the, before petitioner started testimony, petitioner tried to submit a letter from a church in the United States, but that piece of evidence was, the IJ did not allow the admission of that evidence. So we, I see my light is on, can I... Please, that just indicates you have several minutes yet to go, so go ahead. Okay, so... It means you're in your response to this. Yeah, I think this case overall goes to the credibility of the testimony and the evidence. In IJ's decision, she didn't expressly found the petitioner's testimony is not credible. She just concluded that it's vague and implausible, but the reasoning the IJ gave was not supported by the this record. Like the, like the, for example, the IJ said, the IJ concluded that the letter from the neighbor, that's a third-party letter, and the IJ simply dismissed it because it was undated and unsigned. But I think this is a very good piece of evidence, it's from third party, not from the relative, and even though it is undated or unsigned, but from petitioner's testimony, it can be authenticated. And very rare in this kind of claims that the applicants can get third-party letter or statement, and it also happened like 10 years ago, and it is reasonable that the neighbor could just give a brief statement regarding the coerciveness of the process. So I, so we believe, you know, the dismiss of that evidence is not reasonable. Thank you, Mr. Xia. Okay. Ms. Miles? Good morning, Your Honors. I'm Erica Miles for the Attorney General. The court should deny this petition for review because the evidence in the record does not compel the conclusion that Ms. Lee met her burden of proving that she's eligible for asylum or withholding of removal convention against torture protection in this case. As the immigration judge and board decisions well reflect, they weighed all of the evidence that was submitted by Ms. Lee, and they considered the totality of the circumstances of the weakness of the evidence and the lack of corroboration. Under this court's well-established and now long-standing case law, the immigration judge has great latitude to expect corroboration that seems to be reasonably available, and if it's not provided, then that absolutely can go against a petitioner's or an applicant's ability to meet their burden of proof. One of the things in these sorts of cases that's a problem is trying to guess how much corroboration this immigration judge is going to expect. Sure. And we've said, in essence, you're not entitled to advance notice about that. Is the best remedy in that situation, in essence, a motion to reopen with new evidence? If new evidence does become available, or a request for a continuance, if the immigration judge, if an applicant can request a continuance, if the immigration judge has asked specifically, like here, the immigration judge asked about pieces of evidence that were not presented, and the immigration judge considered the applicant's explanation for not providing it, and at one point, one piece she said, I didn't know it was needed. But at no point did she ask for a continuance to say, oh, but I can get that for you if that would help persuade you to the veracity of my claims here. But she didn't even ask for that, didn't offer to try and get anything more. So we don't have that type of scenario here. Instead, we have several aspects of problematic testimony. We have pieces of evidence that she submitted that, apart from the authenticity or reliability issues, they just are not even simply probative of what they purport to try and help corroborate or prove. For example, the medical certificate that she got that allegedly reflecting that she received treatment after a detention period, that actually contradicted her initial testimony, which said she did not receive treatment. And only when she was confronted with this piece of evidence did she change her testimony to say that she later went back after her mother's ointment did not help, then she sought medical treatment. But then another layer of problem with that piece of corroboration she gave was that the date was wrong. It was dated a day earlier than she explicitly said that she went to get the medical treatment. And it was not even an original copy. This was after the detention in the religious arrest, or whatever you want to call it? Yes, I'm sorry. Yeah, this was the medical evidence relating to the arrest. She was left up and banged around and got bruises and things like that, and whether or not she went to the doctor. Right, it was the piece that she was trying to corroborate that she was hurt in the detention facility. But then she also provided a certificate purportedly relating to the forced abortion, that she visited a doctor here in the United States in 2011. But the document itself isn't probative of a It's not probative of her being forced to get an IUD inserted after a forced abortion. It only says that she has an IUD in her in 2011, but the abortion took place in 1999. And there's no explanation or medical assessment by the doctor in that letter that she submits saying that she had had an abortion. So it's not probative of her claim that she was forced to have an abortion. And then another piece of evidence that she submitted was the letter from a neighbor who claimed to have witnessed her being forced into a car and driven off to have a forced abortion. And that's all the letter says. The letter's not signed. It's not dated. That's a reliability issue. But again, the probative value of that is very little. There's no explanation as to how the neighbor knew she went to get an abortion, how the neighbor knew she was forced into a car, how the neighbor knew anything about what happened to her afterward. So it just says that she witnessed her being forced into a car. I mentioned the 10-year delay because the things we've had in the past, it's the future, fear of future. A woman who maybe even is pregnant again or whatever of having another child. Now she's divorced, etc. And I wondered about the all the time over there before this became an issue for asylum. To answer the court's question, under the statute 101A42B, this type of a claim, if someone can prove that they have been forced to have an abortion, they are given the presumption. They are given, by definition, means that they have a well-founded fear. So the timing of the claim is not relevant. It's just the ability to prove that it happened. If a forced sterilization happened, if a forced abortion happened, then that's all that needs to be proved in order to qualify for asylum under this type of a claim. Is that specific to this kind of Chinese family planning limitations claim or is it you're speaking more generally? It's specific to family planning types of claims. It's not But apart from that, what we have here were ample testimonial problems, but not an adverse credibility finding, but problems. Questions that the immigration judge still had unanswered. The immigration judge did not fully believe the claims in front of her. She looked to the corroboration that was submitted, found that all the pieces that were submitted, which weren't many, were not probative in value, and they all had authenticity and reliability problems in of themselves as well. And that was all that was in front of her. And she was not provided any other corroboration as to the material aspects of either of the claims. And while I'm on that, the board did not err in finding the religion-based claim waived. Nowhere in the brief to the board did the petitioner say that she established eligibility for asylum based on her religion. She didn't talk about anything whatsoever what happened in the past. She didn't rebut any of the immigration judge's findings of problematic testimony or a lack of corroboration as to what happened to her in China. She only took issue with the immigration judge questioning why she didn't provide any information about her practice since coming to the U.S. She didn't talk at all about what happened to her and why that was enough, or why that is at least why she met her burden of proving that it happened to her at all. She didn't address it. That is waived. It's not before this court. But in any event, looking at what happened, oh excuse me. I'm dividing them up. The religious thing is, you know, it's probably waived and it doesn't even rise to that level. But that's why I concentrate on the brought up belatedly, and if she really had evidence of that, ten years later would be okay to get an asylum. Under the law it would be, but she has to persuade the immigration judge that it happened, and she didn't. Okay, if she had all the stuff. But she could. You know, most of the time, the problem with those abortions, they don't document those things over there. Sometimes they do. We've had many cases where they have a certificate, sometimes they don't. But that, you know, that wasn't specifically relied on here. When it's voluntary, so-called, that's when they might be able to find some documentation saying it's voluntary. Well, sometimes that in and of itself is a gray area, yes. So, but we don't have that here. I look at this as kind of what's the precedent. If all the things she described were true, that would be open and shut. But the IJ didn't believe her, apparently, and that means credibility, and she loses. Well, the IJ was not persuaded by what she said, and then also what, and the corroboration wasn't enough. Excuse me. That's correct. The bottom line here, the immigration judge was not convinced, and the evidence in the record does not and that Ms. Lee met her burden of proving her eligibility for asylum based on her forced abortions. If the judges don't have any further questions, we ask that the court deny the petition for review. Thank you, Ms. Miles. Mr. Zhang, your time A couple of points about the procedure of this case. You mentioned the motion to reopen. The motion to reopen is, the standard for that is for the new evidence that was not available at the trial. But in this case, there's no such thing. And second, for motion to continuance at a hearing. This case, we had a full evidentiary hearing. Usually, the decision should be made at the conclusion of that hearing. But this case, the IJ did not issue a decision until a couple months later. And only in the decision, we realized a petitioner was noted that she should have corroborated this evidence, that the court has noted that there's no advance notice under the Real ID Act. But under, in this case, with this petitioner's testimony, with her corroboration on the claim of forced abortion, I believe at least she's entitled to additional time to corroborate on that issue. Was there a motion to reopen that was denied? No, there was no case. Okay. Okay. Thank you, Mr Chang. Thank you. Thank you to both council. The case is taken under advised